FILED
SUPERIOR COURT
OF GUAM

2021 JAN 15 PM 4: 41

CLERK OF COURT
BY: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| KLOPPENBURG WORLD BELL PARTNERSHIP,<br><br>              Plaintiff,<br><br>v.<br><br>POLARIS GUAM, LLC,<br><br>              Defendant. | CIVIL CASE NO. CV0215-20<br><br><br>**DECISION AND ORDER** |

This matter came before the Honorable Magistrate Judge Jonathan R. Quan on August 7, 2020 for a hearing on Plaintiff Kloppenburg World Bell Partnership's Complaint for Unlawful Detainer against Defendant Polaris Guam, LLC. Having considered the pleadings and applicable law, the court now issues this decision and order.

### BACKGROUND

At issue in this case is real property, identified as Lot 5140-4, Tumon, Dededo ("the property"), upon which the Verona Resort Hotel ("the premises") is currently located. In 1988, Earl E. Kloppenburg and Lois F. Kloppenburg leased the property to World Bell, Inc. Both Earl E. Kloppenburg and Lois F. Kloppenburg then assigned their interest in the lease to Kloppenburg World Bell Partnership ("Plaintiff"). World Bell, Inc. assigned its interest in the lease to Sherwood, Ltd. In 2002, Plaintiff and Sherwood, Ltd. agreed to amend the lease agreement. In 2011, with the agreement of Plaintiff, Sherwood, Ltd. assigned its interest in the

lease to Defendant Polaris Guam, LLC ("Defendant"). The relevant documents, including the 1988 lease, 2002 amendment to the lease, and the 2011 assignment of the lease, were duly recorded with the Department of Land Management.

On February 14, 2020, Plaintiff, through its counsel, gave Defendant written notice that it had five days to pay rent or quit the premises ("notice"). The notice was directed to Mr. David Su, Defendant's registered agent for service. The notice stated that Defendant was in default of the lease. Specifically, as of January 31, 2020, Defendant owed $623,250.56 in rent and interest for the months of April 2018, October 2018, April 2019, and October 2019, and real property tax for 2014 to 2018. The notice further stated that if Defendant failed make payment or quit the premises, Plaintiff would file an eviction suit against the Defendant.

On February 17, 2020, a process officer attempted to personally serve the notice on Defendant, but found entrance of the premises barricaded, saw no sign of the officers or any other person on the premises, and stated in his Declaration of Non-Service that the premises appeared to be abandoned. He then posted the notice at the premises. On February 18, 2020, the notice was mailed to Defendant by certified mail.

On March 3, 2020, Plaintiff filed the Complaint for Unlawful Detainer now before the court. On March 6, 2020, Plaintiff filed an Ex-Parte Motion for an Order for Publication of and Service of Summons. Plaintiff's counsel filed a declaration stating that Defendant could not be located in Guam, and that he was informed that the resident agent was in Taiwan.

A hearing on the unlawful detainer action was held on March 10, 2020 before Magistrate Judge Benjamin Sison, Jr.; however, he disqualified himself as Bruce Kloppenburg, Managing Director of the Plaintiff partnership, was a former client. The case was reassigned on March 13, 2020. On June 15, 2020, the court ordered service of the Summons (as amended)

and Complaint by publication in a newspaper of general circulation, and by mail via certified mail with return receipt requested and restricted delivery, to the Defendant's last known mailing address.

A hearing on the unlawful detainer action was held on August 7, 2020. At this hearing, Plaintiff's counsel asserted that, in light of the moratorium on evictions pursuant to Executive Order No. 2020-07 (Mar. 28, 2020), he was not seeking eviction of Defendant at this time, but rather, judgment on the amount owed.

## DISCUSSION

### A. Moratorium Imposed by Executive Order No. 2020-07

Before discussing the argument made by the Plaintiff, the Court must first acknowledge that there is a moratorium currently in effect, which prohibits proceeding with eviction and foreclosure actions.

On March 14, 2020, Governor of Guam Lou Leon Guerrero issued Executive Order No. 2020-03, declaring a state of emergency in Guam, in response to the novel coronavirus (or "COVID-19"). This declaration triggered the governor's extensive authority under the Emergency Health Powers Act of Title 10, Chapter 19 of the Guam Code Annotated, which includes the authority to suspend "provisions of any regulatory statute prescribing procedures for conducting local business, or the orders, rules and regulations of any government of Guam agency" as well as the broad power to "utilize all available resources of the government of Guam, as reasonably necessary to respond to the public health emergency." 10 GCA § 19403(a).

On March 28, 2020, the governor issued Executive Order No. 2020-07, which ordered, among other things, that:

> [N]o eviction or foreclosure actions or proceedings involving real estate or property, whether rental or otherwise, may be initiated between the period of the date of this Executive Order until the public health emergency declared in Executive Order No. 2020-03, or any extension thereof, ends. Any eviction or foreclosure action currently in process shall be tolled for the duration of this public health emergency period, or any extension thereof.

It is undisputed that the complaint in this case was filed prior to the declaration of the public health emergency, and thus, is "currently in process." It is further undisputed that the public health emergency has been extended by Executive Order No. 2020-46 (Dec. 29, 2020), and is currently scheduled to expire on January 29, 2021. Executive Order No. 2020-46 also provided that prior executive orders would remain in effect, which naturally includes the executive order imposing a moratorium on evictions.

Plaintiff has not challenged the constitutionality of the moratorium and has not asserted that it violates the Organic Act; therefore, these arguments will be not be addressed here.

The Court will, however, address Plaintiff's contention that this case may proceed despite the moratorium, because Plaintiff is not seeking an eviction, but rather seeking a judgment on the amount owed under the lease. In asserting that the purpose of the action is not to evict, Plaintiff implicitly argues that the purpose of the action is not necessarily to recover possession of the property. This position is antithetical to an unlawful detainer action, as "the purpose of an unlawful detainer action is to recover possession." *Archbishop v. G.F.G. Corp*, 1997 Guam 12 ¶ 10. Although not cited specifically, this action is apparently brought under 21 GCA § 21103, which states in relevant part:

> A tenant of real property, for a term less than life, is guilty of unlawful detainer:
>
> . . .
>
> (b) When he continues in possession, in person or by subtenant, without the permission of his landlord, or the successor in estate of his landlord, if any there be, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and five (5) days'

> notice in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him, and if there is a subtenant in actual occupation of the premises, also upon such subtenant.
>
> Such notice may be served at any time within one (1) year after the rent becomes due. In all cases of tenancy upon agricultural lands, where the tenant has held over and retained possession for more than sixty (60) days after the expiration of the term, without any demand of possession or notice to quit by the landlord, or the successor in estate of his landlord, if any there be, he shall be deemed to be holding by permission of the landlord, or the successor in estate of his landlord, if any there be, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year.

21 GCA § 21103(b). The source of this provision is Guam Code of Civil Procedure § 1161, which in turn was derived from California Code of Civil Procedure § 1161. *See Archbishop*, 1997 Guam 12 ¶ 10 ("Guam's unlawful detainer statute, 21 GCA § 21103, was derived from California's former unlawful detainer statute, Cal. Civ. P. Code § 1161.").

The Supreme Court of Guam has previously ruled that the purpose of an unlawful detainer is to recover possession. *See id.* This interpretation has been long held by California courts, which we may look to for guidance. *Lujan v. J.L.H. Trust*, 2016 Guam 24 ¶ 24 (stating that in cases where Guam has "adopted California statutes, California case law interpreting those statutes stands as persuasive authority."). "[T]he primary purpose of an unlawful detainer proceeding is recovery of possession of the property." *Saberi v. Bakhtiari*, 169 Cal. App. 3d 509, 515 (Ct. App. 1985); *see also Union Oil Co. v. Chandler*, 4 Cal. App. 3d 716, 721 (Ct. App. 1970) (stating that "an unlawful detainer action is a summary proceeding, the primary purpose of which is to obtain the possession of real property in the cases specified by statute"); *Hong Sang Mkt., Inc. v. Peng*, 20 Cal. App. 5th 474, 490-91, (Ct. App. 2018) ("An unlawful detainer action is a summary proceeding designed to adjudicate the right of immediate

possession; the only claims that are cognizable in such a proceeding are those bearing directly on the immediate right of possession."). In fact, the California Supreme Court has arguably rejected Plaintiff's argument: "The primary purpose of such an action is for the recovery of the possession of the property. The recovery of rent is a mere incident to the main object." *Markham v. Fralick*, 2 Cal. 2d 221, 227, 39 P.2d 804, 807 (1934). The court in *Briggs v. Elec. Memories & Magnetics Corp.*, 53 Cal. App. 3d 900, 906 (Ct. App. 1975) stated that "[r]ecovery of damages and rent due under Code of Civil Procedure section 1174 is incidental to the action to recover possession of the premises." Notably, section 1174 in the *Briggs* case is also the source of 21 GCA § 21115, which governs issuance of judgment, and states in relevant part: "If, upon the trial, the findings of the court be in favor the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises. . . . The court shall also . . . find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent."

The Court, guided by the ruling of the Supreme Court of Guam and persuaded by the decisions of these California courts, declines to adopt the Plaintiff's argument.

An unlawful detainer proceeding, by its very nature, is intended to recover possession; it is an eviction. Therefore, this action clearly falls under the moratorium contemplated by Executive Order No. 2020-07 and cannot proceed at this time.

**B. Service of Process**

The Court has been advised by Plaintiff that the Defendant's Registered Agent for Service of Process is not on island, and that service of process was effectuated by mail and by publication. The Court notes that there are significant international air travel restrictions (arrival and departure), quarantine requirements, delays and challenges regarding postal

delivery, and a lack of knowledge regarding the physical health and any medical conditions of the Registered Agent for Service of Process. Further, it is unknown whether the Registered Agent for Service of Process had attempted to return to Guam to attend the hearing, but was unable to do so due to the factors mentioned above. For these reasons, the Court requires Plaintiff to provide service to Defendant when the moratorium is lifted.

## C.  Treatment of Eviction Proceedings in Other Jurisdictions

The Court acknowledges that because of the ongoing coronavirus pandemic, many jurisdictions throughout the United States have instituted prohibitions against eviction proceedings. Further, there is also currently a federal moratorium. prohibition.

The Court notes that in certain states and federally, the protection afforded in other jurisdictions is not automatic and is not unconditional. In Arizona, a tenant seeking relief from eviction must notify the landlord in writing with supporting documentation of their temporary financial hardship. Executive Order 2020-14 (Mar. 24, 2020), retrieved from https://azgovernor.gov/governor/executive-order/2020-14. In Kansas, the governor initially issued a blanket moratorium against foreclosures and evictions. *See* Executive Order No. 20-06 (Mar. 17, 2020), retrieved from https://governor.kansas.gov/wp-content/uploads/2020/03/20-06-Executed.pdf. But recently, this blanket moratorium became subject to certain limitations, specifically, the moratorium was limited to defaults or violations of the rental agreement substantially caused by "financial hardship resulting from the COVID-19 pandemic." Executive Order No. 20-61 (Aug. 17, 2020), retrieved from https://governor.kansas.gov/wp-content/uploads/2020/08/EO-20-61-Reissued-Evictions-and-Foreclosures-Executed.pdf. Notably, the moratorium in Kansas "does not prevent foreclosures or evictions for mortgage or

rental agreement defaults or violations not due to a financial hardship resulting from the COVID-19 pandemic." *Id.*

The Court also notes that other jurisdictions have combined eviction moratoria with rental and mortgage assistance, so that tenants are not evicted and landlords receive rental income. In Colorado, $3 million from the Disaster Emergency Fund was encumbered and made available "to provide short-term rental and mortgage assistance to low-income households facing financial hardship due to economic disruption associated with COVID-19." Executive Order D 2020 012 (Mar. 20, 2020), retrieved from https://drive.google.com/file/d/1mMCRLb6PxMPI680_THFn4nqLGAty1jq9/view. The Connecticut governor recently announced an extension of the eviction moratorium, Executive Order No. 7000 (Aug. 21, 20202), retrieved from https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7OOO.pdf, as well as increased funding for a rental assistance program for residents affected by COVID-19. See Press Release (Aug. 21, 2020), retrieved from https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2020/08-2020/Governor-Lamont-Increases-Funding-for-Housing-Assistance-Programs.

In direct contrast to the above jurisdictions, the Governor of Guam's Executive Order No. 2020-07 creates an automatic, unconditional moratorium that protects both residential and commercial tenants, but leaves landlords -- who may be "mom and pop" operators or small business owners -- without any recourse against delinquent tenants, and without rental income to meet their food and living expenses, utilities, mortgage payments, taxes and extra costs for cleaning and sanitization.

The Court notes that Guam's eviction moratorium was instituted in March 28, 2020 and continues to remain in effect more than nine months later. Unlike other jurisdictions, it has not been amended, such as by requiring that the financial hardships and inability to pay is connected or caused by the COVID-19 pandemic.

There is no question that the coronavirus pandemic has resulted in unprecedented changes to life as we know it. The effects of COVID-19 in Guam has resulted in stay-at-home orders, soaring unemployment, the temporary closure of our borders, and fatalities due to this disease. An eviction moratorium facilitates housing security and serves as one protection that can be afforded to the population of Guam. But at the same time, Executive Order No. 2020-07 creates an unconditional moratorium, without any parameters. The moratorium applies automatically to both residential and commercial tenants, who -- for more than nine months now -- are not required to make any showing of inability to pay or financial hardship caused by the pandemic. The Court notes that Guam's residents have availed of assistance in the form of free food distribution and unemployment payments, but there has been no similar program for housing assistance. (Notably, there is no requirement that residents use the pandemic unemployment payments toward their housing costs).

Once again, the Court notes that the moratorium was instituted in March 28, 2020 and remains in effect more than nine (9) months later, to the detriment of landlords, who also have continuing obligations (over and above the mortgage), which remain uncompensated.

/ / /

/ / /

/ / /

## CONCLUSION

For these reasons, the Court cannot proceed with this Unlawful Detainer complaint, until after the end of the public health emergency, the issuance of a subsequent executive order lifting the Governor's moratorium and / or the expiration or repeal of all relevant federal moratoriums / prohibitions that are currently in force.

Further, Plaintiff will have to provide service to Defendant when the moratorium / prohibition is lifted.

**IT IS SO ORDERED** _January 14, 2021_

_____
HONORABLE JONATHAN R. QUAN
Magistrate Judge, Superior Court of Guam

SERVICE VIA E-MAIL
I acknowledge that an electronic copy of the original was e-mailed to:
ED / YRN

Date: _____ Time: 1/13/21

_____
Deputy Clerk, Superior Court of Guam